People v Hayes (2025 NY Slip Op 51775(U))

[*1]

People v Hayes

2025 NY Slip Op 51775(U)

Decided on November 7, 2025

City Court Of Yonkers

Medina, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 7, 2025
City Court of Yonkers

The People of the State of New York, Plaintiff,

against
Ralphie Hayes, Defendant.

Docket No. CR-10021-23

Hunter S. Chemick, Assistant District Attorney
Westchester County District Attorney's Office
Yonkers Branch
104 South Broadway 
Yonkers NY 10701
Ralphie Hayes
Pro se
Charles R. Mackenzie, Esq.
Legal Advisor 
73 Market Street
Suite 376
Yonkers, NY 10710

Ada D. Medina, J.

Factual Background
Defendant is charged with the misdemeanor offenses of obstructing governmental administration in the second degree (Penal Law § 195.05 [1]) and driving while ability impaired by drugs (Vehicle and Traffic Law § 1192 [4]). Defendant is also charged with traffic infractions for having dirty/obscured license plates (Vehicle and Traffic Law § 402 [1] [b] [i]-[ii]); front, side and rear window tints (Vehicle and Traffic Law § 375 [12-a] [b] [1]-[3]); an unsafe tire (Vehicle and Traffic Law § 375 [35] [c]) and the consumption of alcohol in a motor vehicle (Vehicle and Traffic Law § 1227 [1]).
The People filed a Certificate of Compliance ("COC") and declared ready for trial. Although defendant was assigned multiple attorneys to represent him, he elected to proceed pro se on or about August 27, 2024. This Court conducted a thorough inquiry as to defendant's pro se request and assigned a legal advisor to assist him (Medina, J.). Thereafter, defendant filed a pro se motion to dismiss which was denied by this Court (CPL §§ 210.20 [g], 30.30; US Const 6th, 14th Amends; NY Const art I § 6; Romano, J.). 
On October 20, 2025, this Court conducted pre-trial hearings, on consent of the People, prior to the commencement of a jury trial (Dunaway v New York, 442 US 200 [1979]; Mapp v Ohio, 367 US 643 [1961]; People v Huntley, 15 NY2d 72 [1965]). This Court has considered the testimony and exhibits presented at the hearing. The following constitutes this Court's finding of facts and conclusions of law.
 Hearing Testimony
The People presented testimony from one witness, New York State Police Trooper Thomas Charko, and admitted body worn camera footage into evidence (People's exhibits 1, 19). Trooper Charko testified to the following. On September 30, 2023, at approximately 4:20 p.m., he was working routine patrol assigned to the Sprain Brook Parkway in the City of Yonkers. He initially observed defendant's vehicle which had a license plate that was altered. Trooper Charko testified it "looked like the plate had some type of paint on it to change the lettering or to change something on the plate it looked like paint, some type of spray paint possibly." He also stated he observed "tinted windows on the vehicle." Based on these observations, Trooper Charko conducted a traffic stop of defendant's vehicle.
Upon approaching the vehicle, Trooper Charko requested defendant's driver's license. However, he testified defendant refused to provide his driver's license. Trooper Charko indicated he "smelled an odor of burnt cannabis marijuana emanating from the vehicle" and defendant was being "very irate" and "uncooperative." Defendant was the driver and only occupant of the vehicle. Trooper Charko testified he observed defendant to have "red eyes." Trooper Charko testified he continued to try to interview defendant in regards to a Vehicle and Traffic Law § 1192 investigation. He requested defendant's driver's license multiple times. However, defendant rolled up his window. At this time, Trooper Charko testified the vehicle window had a "very dark tint" and he "could not see into the vehicle."
After the arrival of additional police units from the New York State Police Department, Yonkers Police Department, and the Westchester County Police Department, Trooper Charko testified he asked defendant to step out of the vehicle. Defendant continued to roll the window up and was still uncooperative. Trooper Charko testified this was approximately twenty (20) minutes after the traffic stop began. Eventually, Trooper Charko with the assistance of other officers, broke defendant's window, entered the vehicle, removed defendant, and immediately placed him under arrest for obstructing governmental administration. On cross-examination Trooper Charko testified he did not read defendant his Miranda rights at any point prior to defendant's removal from the vehicle. The People admitted and played into evidence Trooper Charko's body worn camera footage at this point in the hearing (People's exhibit 1).
After defendant was placed under arrest, Trooper Charko conducted an "impound inventory of the vehicle" and found in the "driver's side compartment area, on the door, a package of marijuana." Trooper Charko testified he opened the package and "inside was a small burnt marijuana cigarette." The People stated they did not intend to play any further portion of Trooper Charko's body worn camera footage after the Trooper obtained the marijuana from defendant's vehicle. It was Trooper Charko's testimony that what had occurred so far led him to the conclusion defendant was "possibly under the influence, impaired by marijuana."
Ultimately, defendant was transported to the New York State Police barracks in Hawthorne. While at headquarters, defendant stated he was injured and was subsequently brought to Westchester Medical Center for evaluation. Trooper Charko testified that another Trooper, by the name of Joe Castellano, attempted to conduct a "DRE" (drug recognition expert) [*2]evaluation. Trooper Charko also testified that Troper Castellano read defendant his Miranda warnings, refusal warnings, and asked defendant to provide a blood sample. Trooper Charko testified he "heard" defendant's consent to his blood being withdrawn, however, he was outside of the hospital room when defendant's alleged consent occurred. At this point in the hearing, the People admitted into evidence and played Trooper Charko's body worn camera footage from the hospital (People's exhibit 19). Although Trooper Charko did not testify to this, a review of the body worn camera footage by this Court, indicates defendant stated "he needs an attorney." This statement was made by defendant after his Miranda warnings were read and prior to his "consent" to having blood taken. This concluded the People's direct examination of Trooper Charko.
On cross-examination, defendant asked Trooper Charko if his body worn camera footage showed the license plates which were allegedly altered. Trooper Charko testified the license plates could be seen at the end of the video (People's exhibit 1). However, when defendant asked to see the portion of the video which showed the license plates, the People indicated they "did not intend" to play that portion of the video, did not "think it was relevant," and stated they were "relying on the testimony of the People's direct." The People did not conduct a re-direct of Trooper Charko. 

Analysis
At the outset, this Court must determine whether Trooper Charko was authorized to conduct a traffic stop of defendant's vehicle. The Court of Appeals has held "[a]utomobile stops are lawful when the stop is based on probable cause that a driver has committed a traffic violation" (People v Hinshaw, 35 NY3d 427 [2020]). Moreover, "[a] traffic stop is a seizure and is permissible under the Fourth Amendment of the United States Constitution and article I, § 12 of the New York State Constitution 'where law enforcement has probable cause that a driver has committed a traffic violation'" (People v Patino, 87 Misc 3d 5, 7 [App Term, 2d Dept, 9th & 10th Jud Dists [2025]).
Here, the basis for Trooper Charko stopping defendant's vehicle, and therefore the basis for probable cause, was his observation of altered license plates and tinted windows. No other basis for the traffic stop was offered (see People v Steward, 236 AD3d 1066 [2d Dept 2025] [finding probable cause where officer testified to window tints and a broken taillight]). Therefore, this Court must consider whether the observations of altered license plates and window tints establish probable cause to conduct a traffic stop. 
An operator of a motor vehicle violates Vehicle and Traffic Law § 375 [12-a] [b] [1]-[3], of which defendant here stands charged, when the vehicle's windows are tinted with a "light transmittance of less than seventy percent." As such, tinted windows are not per se illegal in New York State. The Court of Appeals has specifically addressed tinted windows as the basis for a traffic stop indicating "the relevant question for a suppression court in determining whether law enforcement had probable cause is whether 'the officer who stopped the car reasonably believed the windows to be over-tinted in violation of' the Vehicle and Traffic Law" (People v Nektalov, 42 NY3d 363, 367 [2024]).
Moreover, "[i]t is the People's burden 'to come forward with evidence sufficient to establish that the stop was lawful" and establish the Trooper "reasonably believed the windows to be over-tinted" (id.). In Nektalov, the full extent of the officer's testimony was that the vehicle's windows were "excessively tinted" (id.). The Court of Appeals found that testimony to be "effectively a legal conclusion that the tint violated the Vehicle and Traffic Law" and [*3]determined "the People failed to elicit any factual basis for this conclusion" (id.).
Here, this Court finds Trooper Charko's testimony analogous to the officer's testimony in Nektalov. Trooper Charko testified that on September 30, 2023, at approximately 4:20 pm, he observed defendant operating a vehicle that had "tinted windows." Trooper Charko did not expand, nor did the People elicit, any further testimony that, for example, "the windows were so dark that he could not see into the vehicle" prior to conducting the traffic stop (id.; see also People v Ferdinand, 239 AD3d 879 [2d Dept 2025]; People v Hall, 236 AD3d 1334, 1335 [4th Dept 2025] [finding the officer reasonably believed tinted windows violated the law where officer testified "he looked directly at the driver's side window of the vehicle defendant was operating, that he did so from a distance of no more than 10 to 15 feet, and that he was 'unable to see the driver of the vehicle' through the window]).
Rather, Trooper Charko only testified to not being able to see into the vehicle after he conducted the traffic stop and upon approaching the driver's side window. Furthermore, Trooper Charko's only testimony regarding his training and experience was with the New York State Police Academy. This included specific training for Vehicle and Traffic Law § 1192 arrests. However, he did not testify to having any "training [or] experience in identifying illegally tinted windows or conducting this type of stop," "nor did [he] testify that he measured the tint after stopping the vehicle and the results confirmed that the tint level violated the Vehicle and Traffic Law, which could have provided objective, corroborative evidence of the reasonableness of his conclusion" (Nektalov, 42 NY3d at 367-368).
This Court notes that a review of the body worn camera footage does seem to show tinted windows (People's exhibit 1). However, this Court is unable to determine, without further evidence, testimony, or factual basis, whether the level of tint violates the Vehicle and Traffic Law. Therefore, following the Court of Appeals analysis in Nektalov, this Court determines the pre-trial hearing "record is bereft of evidence [] to support [Trooper Charko's] conclusory belief that the tinted windows violated the law" (id.at 368).
This Court is inclined to continue the analysis in Nektalov to determine whether Trooper Charko's testimony as to altered license plates is also conclusory. Vehicle and Traffic Law § 402 [1] [b] [i]-[ii] states "[n]umber plates shall be kept clean and in a condition so as to be easily readable" and "[n]umber plates shall not be knowingly covered or coated with any material or substance that conceals or obscures such number plates or that distorts a recorded or photographic image of such number plates."
Here, Trooper Charko testified he observed a "plate that was altered," that it "looked like the plate had some type of paint on it to change the lettering or to change something on the plate it looked like paint, some type of spray paint possibly." However, Trooper Charko did not testify, nor did the People elicit, any further factual information about exactly how the plates were altered. More importantly, the People chose not to play any portion of the body worn camera footage showing the license plates to corroborate Trooper Charko's testimony. Nor did Trooper Charko testify to confirming, after the stop was conducted, that the plates were in fact altered. 
Therefore, this Court finds Trooper Charko's testimony regarding the license plates to be conclusory. As such, this Court cannot determine whether the license plates were altered in any manner that the plates were not "easily readable" or were so altered to "conceal or obscure" to form the basis of a valid traffic stop (Vehicle and Traffic Law § 402 [1] [b] [i]-[ii]; but see People v Hooks, 240 NYS 3d 381 [1st Dept 2025] [finding testimony and corroborating [*4]photographic evidence established a license plate frame covered the bottom portion of the license plate, in violation of former Vehicle and Traffic Law § 402 [1] [b]), which justified police stopping the vehicle]).

Conclusion
Based on the foregoing, this Court finds the People did not elicit sufficient testimony from their witness to establish probable cause to conduct a lawful traffic stop. Since there was no probable cause to conduct the traffic stop, defendant's motion to suppress all evidence and testimony stemming from the unlawful stop is hereby GRANTED and the accusatory instruments are DISMISSED.
Based on this determination, this Court does not need to reach the merits of defendant's or the People's remaining arguments. This Court rendered its decision on the record on October 21, 2025, and informed the parties this written Decision and Order would follow. This Court also granted the People a thirty (30) day stay of this Court's determination.
Since defendant elected to proceed pro se in this matter, although with the assistance of a legal advisor, this Court found it imperative to clarify its ruling on the record and reiterates its clarification in writing. This Decision and Order does not mean this Court finds defendant's window tints and/or license plates legally authorized pursuant to Vehicle and Traffic Law §§ 402 [1] [b] [i]-[ii], 375 [12-a] [b] [1]-[3]). Rather, this determination is based on the testimony, or lack thereof, elicited from the People's witness. Had the People elicited more factual information from their witness, this Court's determination may have been different. If the traffic stop had been lawful, this Court's analysis would have gone further, and a different outcome may have resulted.